WAYNE COUNTY PROSECUTOR v RECORDER'S COURT JUDGE

(PEOPLE v ALEXANDER)

PEOPLE v BRINTLEY

Docket Nos. 62083, 62084. Argued January 10, 1979 (Calendar Nos. 5, 6).—Decided June 25, 1979. Rehearing denied *post*, p 1127. Appeal dismissed by the Supreme Court of the United States November 13, 1979.

   Annette G. Alexander was convicted by a jury in Recorder's Court of Detroit, Robert L. Evans, J., of second-degree murder and possession of a firearm during the commission of a felony. The trial court refused to impose the statutory two-year sentence for the felony-firearm conviction on the ground that to do so would violate constitutional prohibitions against double punishment. The Wayne County Prosecutor brought an action for superintending control in the Court of Appeals against the Recorder's Court judge to compel sentencing under the felony-firearm statute. The Court of Appeals, D. C. Riley, P.J., and T. M. Burns, J. (Cynar, J., dissenting), vacated the conviction of possession of a firearm in the commission of a felony (Docket No. 77-3189). The Supreme Court granted leave to appeal *sua sponte* (Docket No. 62083).

   Curtis Brintley was convicted in Recorder's Court of Detroit, Robert L. Evans, J., of armed robbery and possession of a firearm during the commission of a felony. The Court of Appeals, D. E. Holbrook, Jr., P.J., and T. M. Burns and Van Valkenburg, JJ., reversed defendant Brintley's conviction of possession of a firearm during the commission of a felony

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 10, 27] 21 Am Jur 2d, Criminal Law §§ 182 *et seq.*, 547, 590.
   73 Am Jur 2d, Statutes §§ 145, 146, 196, 272.
[3, 9, 11-17, 19-23] 21 Am Jur 2d, Criminal Law §§ 182 *et seq.*, 547, 590.
   73 Am Jur 2d, Statutes §§ 196, 272, 275, 300.
[4, 5, 18, 26] 21 Am Jur 2d, Criminal Law §§ 182 *et seq.*, 590.
[6, 24] 21 Am Jur 2d, Criminal Law § 182 *et seq.*
   40 Am Jur 2d, Homicide §§ 43, 53, 267, 275, 315, 478.
[7, 2, 25] 21 Am Jur 2d, Criminal Law § 182 *et seq.*
   67 Am Jur 2d, Robbery §§ 4, 48, 77.

(Docket Nos. 77-2756, 77-3404). The Supreme Court granted leave to appeal *sua sponte* (Docket No. 62084). *Held:*

1. The Legislature intended to create a separate crime distinct from the underlying felony or attempted felony and intended that cumulative punishment should be imposed. The language employed, "in addition to", "consecutively" to, and "preceding" the sentence for the underlying crime, markedly differs from the language used by the Legislature in those statutes which are merely sentence enhancement provisions, such as the statutes enhancing sentences of repeated offenders and statutes establishing mandatory minimum sentences for some crimes. The Legislature has clearly expressed its judgment that carrying a firearm during the course of a felony carries with it a distinct social harm which deserves separate treatment. In order to deter the use of guns, the Legislature has chosen to create a separate crime.

2. The Supreme Court of the United States has said that the Fifth Amendment double jeopardy guarantee serves principally as a restraint on courts and prosecutors because it was designed originally to embody the protection of the common-law pleas of former jeopardy. It does not substantively restrict the Legislature, which remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the Legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial. It protects against multiple punishments for the same offense, but where consecutive sentences are imposed at a single criminal trial the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense. Whatever views may be entertained regarding severity of punishment, whether one believes in its efficacy or its futility, the proper apportionment of punishment is peculiarly a question of legislative policy.

3. Absent a clear expression of legislative intent to authorize multiple convictions and cumulative punishments, doubt will be resolved against turning a single transaction into multiple offenses.

4. The Supreme Court of the United States has said that the *Blockburger* rule, which requires that each statute require proof of a fact which the other does not, serves the function of identifying legislative intent to impose separate sanctions for multiple offenses arising in the course of a single act or transaction. It is not necessary to decide whether this rule is a

constitutional test because, even if it is, it is satisfied in these cases.

5. The Supreme Court of the United States, in applying the *Blockburger* rule, has focused on the legal elements of the offenses, not on the particular factual occurrence which gives rise to the charges. If each statute requires proof of a fact that the other does not, the rule is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.

6. Looking only to the statutory elements of the offenses charged in these cases, the *Blockburger* rule is satisfied. The prosecution in *Wayne County Prosecutor v Recorder's Court Judge (People v Alexander)* was legally required, to convict the defendant of second-degree murder, to prove a homicide and malice aforethought, neither of which is legally required to convict the defendant of the felony-firearm offense. On the other hand, to convict the defendant of possession of a firearm during the commission of a felony, the prosecution must prove first, that the defendant carried or possessed a firearm, an element which is not necessary to a conviction of second-degree murder, and second, that the firearm was carried or possessed during the commission of *any* felony or attempted felony, other than carrying a concealed weapon or unlawful possession of a weapon. The underlying felony was not required to be second-degree murder. Although the prosecution in the *Alexander* case relied factually on proof of a second-degree murder as the underlying felony to secure a conviction of the felony-firearm offense, legally it was not required to do so. Any proper felony would have sufficed. It is possible, legally, to commit the felony-firearm offense without committing second-degree murder. Despite a substantial overlap in the proof offered to establish the crimes, the *violation,* as distinguished from the direct evidence offered to prove the violation, was distinctly different under the statutes. Each statutory provision legally requires proof of a fact that the other does not.

7. The same rationale applies to *People v Brintley,* in which the defendant was convicted of armed robbery and the felony-firearm offense. The prosecution, to sustain the charge of armed robbery, was required to prove an assault, a taking, and an intent to permanently deprive the owner of his property, none of which is required to convict the defendant of the felony-firearm charge. On the other hand, in order to convict the defendant of felony-firearm, the prosecution was legally required to prove possession of a firearm, a fact which is not necessary to secure a conviction of armed robbery. The prosecution was not legally required to prove armed robbery; any

proper felony would have sufficed. Each of the statutes requires proof of a fact which the other does not. The mere fact that one factual occurrence, the possession of a gun, is employed to supply proof of an element of two distinct crimes does not violate the *Blockburger* rule. A substantial overlap of factual proofs is permissible.

8. Some Michigan cases have focused on the factual proofs involved and have concluded that two convictions and their attendant punishments cannot both stand. However, none of those cases involved statutes which evidenced a clear legislative intent to authorize separate convictions and cumulative punishments based on one occurrence. They are distinguishable because the Legislature has clearly expressed in the felony-firearm statute an intent to authorize multiple convictions and cumulative punishments.

The decisions of the Court of Appeals are reversed in both cases, the convictions of defendants Alexander and Brintley of the felony-firearm charges are reinstated and *Wayne County Prosecutor v Recorder's Court Judge (People v Alexander)* is remanded to the Recorder's Court of Detroit for imposition of the mandatory two-year consecutive sentence for the felony-firearm conviction.

Reversed.

Justice Kavanagh, joined by Justices Levin and Moody, dissented:

The substantive offense and the underlying felony are the "same" for double jeopardy purposes; therefore, conviction of both violates the Michigan and Federal Double Jeopardy Clauses. The express legislative intent to authorize separate convictions and punishment of the two offenses does not avoid violation of these constitutional guarantees.

1. There is no doubt that in enacting the felony-firearm statute the Legislature intended to create an offense distinct from the underlying felony. The statute provides that possessing a firearm during the commission of a felony is a felony in and of itself. The mandatory sentence provision also states that the felony-firearm sentence is to run before and consecutively to the sentence imposed for the underlying felony. When the language used in this statute is compared with that in statutes which provide for sentence enhancement or minimum sentence, it is clear that neither of those results was intended.

2. Punishment for both a separate and distinct statutory offense and its underlying felony violates the constitutional prohibitions against double jeopardy where the two offenses are

the "same". The Federal rule for double jeopardy purposes is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not. This test focuses upon the statutory elements of the two offenses, not upon the evidence introduced to establish their commission.

3. A necessarily included lesser offense, as the Court has previously defined it, is the "same" offense as the greater for double jeopardy purposes. The greater offense contains all of the legal elements contained in the lesser, and more. Each provision does not require "proof of a fact which the other does not". Because it is legally impossible to commit the greater without committing the lesser, they are the "same" offense. The lesser is logically included in the greater. An offense can also be necessarily included in another if the Legislature decides to so structure the law. This is true whenever a statute provides that one crime is committed only as and when another crime is committed. Such an offense would be necessarily included not as a matter of logic, but on account of legislative determination. Such an offense would also be the "same" for double jeopardy purposes.

4. The prosecutor's argument that because any felony may be the underlying crime in a felony-firearm prosecution, there is no one specific felony which is necessarily included by statute is not persuasive. Every prosecution for felony-firearm must charge 1) possession of a firearm, 2) during the commission of a specified felony. Only proof of the underlying felony charged will supply the second element which the Legislature has determined to be necessary to effect a felony-firearm conviction. It is the specification of the felony in the charge that has the effect of making it a necessarily included offense under the law.

5. The logic of other cases permitting only one conviction applies with equal force here because the underlying felony here was the "necessary" prerequisite to the felony-firearm charge, and on the facts, constituted one indivisible criminal act. This renders them the "same" offense and one conviction is all that may be had. Protection from multiple *punishment* for the same offense lies at the core of the Double Jeopardy Clause, and this protection is as applicable to single prosecutions as to two.

6. The suggestion that "procedural" double jeopardy limits the Legislature while "substantive" double jeopardy does not, or that the Legislature can authorize multiple punishments at

one trial which it could not authorize at successive trials is not accurate. The purpose of the ban on double jeopardy is to prevent repeated attempts to convict a person, thereby subjecting him to embarrassment, expense, and ordeal, and compelling him to live in a continuing state of anxiety and insecurity. If the Legislature may not intentionally subject a defendant to the harassment, anxiety, and expense of defending multiple charges of the "same" offense at successive trials, it may not intentionally do so at one trial. Jeopardy attends each charge of an offense, regardless of its occasion.

7. The general rule is that the remedy for a violation of the Double Jeopardy Clause by conviction of a greater and its included offense is to vacate the second conviction. However, application of the general rule in these cases would require vacation of a conviction of second-degree murder and a conviction of armed robbery, a result which is socially and logically unwarranted. Therefore, the Court should vacate the convictions of the felony-firearm offense and leave the convictions of the underlying felonies undisturbed.

Justice Levin agreed with Justice Kavanagh, for the reasons set forth in his opinion, that the Double Jeopardy Clause precludes conviction and punishment of both the underlying felony and felony firearm and that the felony-firearm convictions should be vacated. He wrote separately, joined by Justices Kavanagh and Moody, to respond to the opinion of the Court.

1. It is the duty of the Court, minimally, to decide these cases as it thinks the Supreme Court of the United States would decide them. The assessment should reflect the reasoning and holdings of that Court and its repeated statements of law should be taken at face value. Those decisions provide no support for the holding implicit in the Court's opinion that, in the "single prosecution" context, the Legislature may, consistent with the Double Jeopardy Clause, define crimes and fix punishments to provide cumulative convictions of and punishments for the same offense. To the contrary, while the Supreme Court has frequently said that a legislature is free to define crimes and fix punishments, it has also said that the charging powers of prosecutors and the adjudicatory and sentencing powers of courts may not be exercised so as to subject a person —even at one trial—to the jeopardy of multiple convictions of or punishments for the same offense.

2. The Supreme Court of the United States has adopted the "required evidence" test to determine whether the offenses are the "same". It has, in the application of that test, looked to the statutory elements and the required proofs, rather than the

actual evidence or proofs. However, the alternative argument of the Court's opinion, based on those precepts, that if the Double Jeopardy Clause applies at all the underlying felony and felony firearm are not the same offense, ignores altogether another opinion of the Supreme Court of the United States which held that where an element of the greater offense is the commission of "any felony", the focus is not on the elements of any of the large number of felonies that might theoretically have been charged but, rather, on the elements of the felony that was charged.

3. In these cases the felonies that were charged were murder (in *Alexander)* and armed robbery (in *Brintley).* Paraphrasing the Supreme Court of the United States in *Harris v Oklahoma,* the proofs of those underlying felonies were "needed to prove" elements necessary for convictions of felony firearm. Conviction of the "greater" offense (felony firearm) "cannot be had without conviction of the lesser" offense (murder/armed robbery). The Double Jeopardy Clause, as applied by the Supreme Court, thus bars conviction of both offenses. These cases are more compelling than the *Harris* case because here the defendants' convictions of felony firearm depended on their convictions of the underlying felony. The defendant in *Harris* had been convicted of felony murder on proof of a killing in the course of a robbery with firearms. He was *thereafter* tried separately and convicted of robbery with firearms. The conviction of the greater offense did not depend on conviction of the lesser.

4. The felony-firearm statute contemplates conviction of an underlying felony as a condition precedent to conviction of felony firearm. Further, in *Alexander* the jury was instructed that conviction of felony firearm depended on conviction of another felony. Conviction of an underlying felony was thus necessary before conviction of the felony-firearm charge. A conviction born of another conviction is uniquely within the proscription of the Double Jeopardy Clause which, among other things, seeks to protect accused persons from proliferation of convictions of and punishments for the same offense.

5. Although the Legislature might accomplish its purpose by a sentence enhancement provision, because multiple convictions for the same offense expose offenders to additional sentences it is substantively important to enforce the mandate of the Double Jeopardy Clause. While the Legislature may, consistent with the Double Jeopardy Clause, provide that "one with a gun gets you two", since the offenses here are the same the Double Jeopardy Clause precludes two convictions and two punishments.

85 Mich App 727; 272 NW2d 587 (1978) reversed.
85 Mich App 714; 272 NW2d 582 (1978) reversed.

OPINION OF THE COURT

1. WEAPONS — STATUTES — FIREARMS — FELONY.

The Legislature, in providing that any person carrying or possessing a firearm at the time he commits or attempts to commit a felony is guilty of a felony, intended to create a separate crime distinct from the underlying felony or attempted felony, and intended that cumulative punishment should be imposed (MCL 750.227b; MSA 28.424[2]).

2. WEAPONS — STATUTES — FIREARMS — FELONY.

The Legislature has clearly expressed its judgment that carrying a firearm during a felony which may, but need not necessarily, involve the carrying of a firearm, entails a distinct social harm inimical to the public health, safety and welfare which deserves separate treatment; in order to deter the use of guns, the Legislature has chosen to create a separate crime (MCL 750.227b; MSA 28.424[2]).

3. CRIMINAL LAW — STATUTES — DOUBLE PUNISHMENT.

Absent a clear expression of legislative intent to authorize multiple convictions and cumulative punishments, doubt will be resolved against turning a single transaction into multiple offenses (US Const, Am V; Const 1963, art 1, § 15).

4. CRIMINAL LAW — DOUBLE PUNISHMENT.

The Supreme Court of the United States has said that in determining whether separate punishment might be imposed for violation of two distinct statutory provisions, the applicable rule is whether each provision requires proof of a fact which the other does not.

5. CRIMINAL LAW — DOUBLE PUNISHMENT.

The Supreme Court of the United States, in applying the Federal test for determining whether separate punishment might be imposed for violation of two distinct statutory provisions, has focused on the legal elements of the offenses, not on the particular factual occurrence which gives rise to the charges; if each legally requires proof of a fact that the other does not, the test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.

6. HOMICIDE — SECOND-DEGREE MURDER — FIREARMS — DOUBLE PUNISHMENT.

Convicting a defendant of second-degree murder and of carrying

or possessing a firearm during the murder does not violate the Federal rule against double punishment; despite a substantial overlap in the proof offered to establish the crimes, the *violation,* as distinguished from the direct evidence offered to prove the violation, is distinctly different under the statutes and each legally requires proof of a fact that the other does not (MCL 750.227b, 750.317; MSA 28.424[2], 28.549).

7. ROBBERY — ARMED ROBBERY — DOUBLE PUNISHMENT — FIREARMS.

Convicting a defendant of armed robbery and of carrying or possessing a firearm during the armed robbery does not violate the Federal rule against double punishment; each of the statutes legally requires proof of a fact which the other does not (MCL 750.227b, 750.529; MSA 28.424[2], 28.797).

8. CRIMINAL LAW — DOUBLE PUNISHMENT — FIREARMS — ARMED ROBBERY.

That one factual occurrence, the possession of a gun, is employed to supply proof of an element of two distinct crimes, armed robbery and carrying or possessing a firearm during the armed robbery, does not violate the Federal rule against double punishment (MCL 750.227b, 750.529; MSA 28.424[2], 28.797).

9. CRIMINAL LAW — STATUTES — DOUBLE PUNISHMENT.

The prohibition against double punishment will not permit both of two convictions and their attendant punishments to stand where the Legislature has not clearly authorized multiple convictions and cumulative punishments.

DISSENTING OPINION BY KAVANAGH, J.

10. WEAPONS — STATUTES — FIREARMS — POSSESSION — FELONY.

*The Legislature intended in enacting the felony-firearm statute to create an offense distinct from the underlying felony (MCL 750.227b; MSA 28.424[2]).*

11. CRIMINAL LAW — STATUTES — DOUBLE PUNISHMENT.

*Punishment for both a separate and distinct statutory offense and its underlying felony violates the constitutional prohibitions against double punishment where the two offenses are the "same" (US Const, Am V; Const 1963, art 1, § 15).*

12. CRIMINAL LAW — STATUTES — DOUBLE PUNISHMENT.

*The Federal rule for double jeopardy purposes is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each*

*provision requires proof of a fact which the other does not; this test focuses upon the statutory elements of the two offenses, not upon the evidence introduced to establish their commission (US Const, Am V; Const 1963, art 1, § 15).*

13. CRIMINAL LAW — LESSER INCLUDED OFFENSES — DOUBLE PUNISHMENT.

*A necessarily included lesser offense is the "same" offense as the greater for purposes of the constitutional prohibition against double punishment; the lesser offense does not require "proof of a fact which the other does not" because the greater offense contains all of the legal elements contained in the lesser, and more (US Const, Am V; Const 1963, art 1, § 15).*

14. CRIMINAL LAW — STATUTES — DOUBLE PUNISHMENT.

*A statute which provides that one crime is committed only as and when another crime is committed violates the constitutional prohibition against double punishment because it creates a necessarily included offense which is the "same" offense as a matter of legislative determination (US Const, Am V; Const 1963, art 1, § 15).*

15. WEAPONS — STATUTES — FIREARMS — POSSESSION — FELONY — DOUBLE PUNISHMENT.

*The felony-firearm statute violates the constitutional prohibition against double punishment because only proof of the underlying felony also charged will supply an element which the Legislature has determined to be necessary to a felony-firearm conviction; it is the specification of the underlying felony in the charge that has the effect of making it a necessarily included offense of the felony-firearm offense under the law (US Const, Am V; Const 1963, art 1, § 15; MCL 750.227b; MSA 28.424[2]).*

16. WEAPONS — STATUTES — FIREARMS — POSSESSION — FELONY — DOUBLE PUNISHMENT.

*The underlying felony in prosecution under the felony-firearm statute is the "necessary" prerequisite to the felony-firearm charge, and on the facts the two offenses constitute one indivisible criminal act; therefore, they are the "same" offense and one conviction is all that may be had (US Const, Am V; Const 1963, art 1, § 15; MCL 750.227b; MSA 28.424[2]).*

17. CRIMINAL LAW — STATUTES — DOUBLE PUNISHMENT.

*The Legislature may not intentionally subject a defendant to the harassment, anxiety, and expense of defending multiple charges of the "same" offense at successive trials or at one trial (US Const, Am V; Const 1963, art 1, § 15).*

18. CRIMINAL LAW — DOUBLE PUNISHMENT.

> *Protection from double punishment for the same offense lies at the core of the Double Jeopardy Clause; therefore jeopardy attends each charge of the same offense, regardless of its occasion (US Const, Am V; Const 1963, art 1, § 15).*

19. CRIMINAL LAW — STATUTES — DOUBLE PUNISHMENT.

> *Cases in which the government is able to prove violations of two separate criminal statutes with precisely the same factual showing raise the prospect of double jeopardy and the possible need to evaluate the statutes to determine whether cumulative punishments for the two offenses are constitutionally permissible; determination of the legislative intent to provide cumulative punishments for the two offenses is the beginning, and not the end, of the analysis necessary to decide a double jeopardy question (US Const, Am V; Const 1963, art 1, § 15).*

20. WEAPONS — STATUTES — FIREARMS — POSSESSION — FELONY — DOUBLE PUNISHMENT.

> *A conviction of possession of a firearm in the commission of a felony should be vacated as violating the rule against double punishment and the conviction of the underlying felony affirmed because application of the general rule to vacate the second conviction (the underlying felony) would be a result which is socially and logically unwarranted (MCL 750.227b; MSA 28.424[2]).*

DISSENTING OPINION BY LEVIN, J.

21. CRIMINAL LAW — CONSTITUTIONAL LAW — DOUBLE PUNISHMENT — COURTS.

> *It is the duty of a court, minimally, in deciding a contention that the Double Jeopardy Clause precludes conviction of and punishment for violation of two statutory provisions by the commission of a crime, to decide the case as it thinks the Supreme Court of the United States would decide it; the assessment should reflect the reasoning and holdings of that Court and its repeated statements of law should be taken at face value (US Const, Am V; Const 1963, art 1, § 15).*

22. CRIMINAL LAW — STATUTES — DOUBLE PUNISHMENT.

> *The Supreme Court, of the United States has frequently said that a legislature is free to define crimes and fix punishments; but it has also said that the charging powers of prosecutors and the adjudicatory and sentencing powers of courts may not be exercised so as to subject a person, even at one trial, to the*

*jeopardy of multiple convictions of or punishments for the same offense (US Const, Am V).*

23. CRIMINAL LAW — STATUTES — DOUBLE PUNISHMENT.

*The Supreme Court of the United States has held that the "required evidence" test determines whether two offenses are the "same" under the Double Jeopardy Clause, and that where an element of the greater offense is the commission of "any felony", the focus is not on the elements of any of the large number of felonies that might theoretically have been charged but, rather, on the elements of the felony that was charged (US Const, Am V).*

24. HOMICIDE — SECOND-DEGREE MURDER — FIREARMS — DOUBLE PUNISHMENT.

*The Double Jeopardy Clause, as applied by the Supreme Court of the United States, bars conviction of both second-degree murder and of carrying or possessing a firearm during the murder because the proofs of the underlying murder are needed to prove the elements necessary for conviction of the felony-firearm offense; conviction of the "greater" offense (felony firearm) cannot be had without conviction of the "lesser" offense (murder) (US Const, Am V; Const 1963, art 1, § 15; MCL 750.227b, 750.317; MSA 28.424[2], 28.549).*

25. ROBBERY — ARMED ROBBERY — DOUBLE PUNISHMENT — FIREARMS.

*The Double Jeopardy Clause, as applied by the Supreme Court of the United States, bars conviction of both armed robbery and of carrying or possessing a firearm during the robbery because the proofs of the underlying robbery are needed to prove the elements necessary for conviction of the felony-firearm offense; conviction of the "greater" offense (felony firearm) cannot be had without conviction of the "lesser" offense (armed robbery) (US Const, Am V; Const 1963, art 1, § 15; MCL 750.227b, 750.529; MSA 28.424[2], 28.797).*

26. CRIMINAL LAW — DOUBLE PUNISHMENT — FIREARMS.

*A conviction born of another conviction is uniquely within the proscription of the Double Jeopardy Clause which, among other things, seeks to protect accused persons from proliferation of convictions and punishments for the same offense; the felony-firearm statute contemplates conviction of an underlying felony as a condition precedent to conviction of carrying or possessing a firearm during the felony, and thus offends the Double Jeopardy Clause (US Const, Am V; Const 1963, art 1, § 15; MCL 750.227b; MSA 28.424[2]).*

27. CRIMINAL LAW — DOUBLE PUNISHMENT — FIREARMS.

> The Legislature may, consistent with the Double Jeopardy Clause, provide for sentence enhancement where a firearm is used in the commission of a felony; but where the offenses are the same there cannot be two convictions and two punishments (US Const, Am V; Const 1963, art 1, § 15; MCL 750.227b; MSA 28.424[2]).

*William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Craig L. John* and *Timothy A. Baughman,* Assistants Prosecuting Attorney, for plaintiff Wayne Prosecuting Attorney.

*Frank J. Kelley,* Attorney General, and *Robert A. Derengoski,* Solicitor General, for the people.

*Alphonso R. Harper* for defendant Recorder's Court Judge.

*Kenneth M. Mogill* for defendant Alexander.

*Arthur H. Landau* for defendant Brintley.

Amici Curiae:

*Dennis Hertel.*

*David M. Lawson* for Oakland County Criminal Defense Bar Association.

*Lawrence J. Bunting,* Assistant Prosecuting Attorney, for *L. Brooks Patterson,* Prosecuting Attorney, and *Robert C. Williams,* Chief Appellate Counsel.

*Peter E. Deegan,* President, and *Joseph T. Barberi,* Chairman, Amicus Curiae Committee, and *Donald A. Johnston,* Chairman, Prosecutors' Ap-

pellate Forum, for Prosecuting Attorneys Association of Michigan.

*Janet Tooley,* Assistant Defender, and *Peter Van Hoek,* Research Attorney, for State Appellate Defender Office.

COLEMAN, C.J. *(for reversal).* Leave to appeal was *sua sponte* granted in these cases[1] to resolve a substantial conflict among our lower courts as to the constitutionality of Michigan's felony-firearm statute, MCL 750.227b; MSA 28.424(2), which states:

> "A person who carries or has in his possession a firearm at the time he commits or attempts to commit a felony, except the violation of section 227 [carrying a concealed weapon] or section 227a [unlawful possession of a weapon by a licensee], is guilty of a felony and shall be imprisoned for 2 years."
> "The term of imprisonment prescribed by this section shall be in addition to the sentence imposed for the conviction of the felony or the attempt to commit the felony, and shall be served consecutively with and preceding any term of imprisonment imposed for the conviction of the felony or attempt to commit the felony."

In *Wayne County Prosecutor v Recorder's Court Judge (People v Alexander),* the evidence indicated that the defendant, Annette Gail Alexander, shot and killed a man with a shotgun. She was convicted in a single trial of second-degree murder and felony-firearm. The trial judge sentenced her on the murder conviction, but refused to impose the mandatory two-year sentence for felony-firearm because he believed to do so would violate constitutional prohibitions against double punish-

---

[1] 403 Mich 832-833 (1978).

ment. In *People v Brintley,* the evidence indicated that defendant carried and exhibited a handgun while he robbed a woman. He was convicted in a single trial of armed robbery and felony-firearm.[2] The trial judge sentenced him on the armed robbery conviction and also imposed the mandatory two-year consecutive sentence for felony-firearm.[3]

The question presented is whether separate convictions and consecutive sentences for both a felony and for felony-firearm in cases such as these violate the Michigan and United States constitutional prohibition against being twice placed in jeopardy for the same offense.[4]

The Court of Appeals concluded in both of these cases that the Michigan and the United States Constitutions were violated, and therefore vacated the defendants' respective convictions for felony-firearm.[5]

We reverse, reinstate the convictions and remand *People v Alexander* to the trial court for imposition of the mandatory two-year consecutive sentence for felony-firearm.

---

[2] His codefendant, Carlos Robinson, was not convicted of felony-firearm and is not involved in this appeal.

[3] The Court of Appeals opinion indicates that the trial judge sentenced Brintley to serve two to ten years in prison for the felony-firearm conviction. The abstract of conviction and sentence in the trial court file states that the sentence was simply two years. The Department of Corrections confirms that the sentence was a determinate two years.

[4] Amendment V of the United States Constitution states:

"[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."

Article 1, § 15 of the Michigan Constitution similarly states:

"No person shall be subject for the same offense to be twice put in jeopardy."

[5] *Wayne County Prosecutor v Recorder's Court Judge,* 85 Mich App 727; 272 NW2d 587 (1978), and *People v Brintley,* 85 Mich App 714; 272 NW2d 582 (1978).

# I

Although different panels of the Court of Appeals have reached widely divergent conclusions as to the constitutionality of the felony-firearm statute, almost all of them seem to agree that the Legislature intended to create a separate crime distinct from the felony or attempted felony and intended that cumulative punishment should be imposed.[6] We agree.

The statute decrees that any person carrying or possessing a firearm during a felony or attempted felony *"is guilty of a felony"* and shall be imprisoned for two years. This two-year sentence must be imposed *"in addition to"* the sentence for the felony or attempted felony and must be served *"consecutively"* to and *"preceding"* the sentence for that crime. (Emphasis added.)

This language is markedly different from the language used by the Legislature in those statutes which are merely sentence enhancement statutes. For example, the habitual offender statute regarding second offenders states:

"A person, who after having been convicted within this state of a felony, or an attempt to commit a felony, or, under the laws of any other state, government or country, of a crime which if committed within this state, would be a felony, commits any felony within this state, is punishable upon conviction as follows: If the subsequent felony is such that, upon a first conviction

[6] See, for example, *People v Brintley,* 85 Mich App 714; 272 NW2d 582 (1978); *People v Gary Hughes,* 85 Mich App 674; 272 NW2d 567 (1978), *People v Walter Johnson,* 85 Mich App 654; 272 NW2d 605 (1978), and *Wayne County Prosecutor v Recorder's Court Judge,* 85 Mich App 727; 272 NW2d 587 (1978). Most of the cases construing the statute as merely a sentence enhancing or sentence augmenting device have done so only to avoid perceived constitutional problems. See, for example, *People v McDowell,* 85 Mich App 697; 272 NW2d 576 (1978), opinion of BASHARA, P.J.

the offender would be punishable by imprisonment for any term less than his natural life, then such person may be placed on probation or sentenced to imprisonment for a term not more than 1-1/2 times the longest term prescribed for a first conviction of such offense or for any lesser term in the discretion of the court; if the subsequent felony is such that, upon a first conviction the offender might be punished by imprisonment for life then such person may be placed on probation or sentenced to imprisonment for life or for any lesser term in the discretion of the court."[7]

There is no language in this statute indicating that the defendant shall be deemed guilty of a separate felony or that a consecutive sentence is to be imposed. The one sentence originally imposed for the felony which gives rise to the habitual offender proceedings is simply increased.

The language of the felony-firearm statute is also significantly different from the language used by the Legislature in those statutes which establish mandatory minimum sentences. For example, the armed robbery statute states:

"Any person who shall assault another, and shall feloniously rob, steal and take from his person, or in his presence, any money or other property, which may be the subject of larceny, such robber being armed with a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon, shall be guilty of a felony, punishable by imprisonment in the state prison for life or for any term of years. *If an aggravated assault or serious injury is inflicted by any person while committing an armed robbery as defined in this section, the sentence shall be not less than 2 years' imprisonment in the state prison.*"[8] (Emphasis added.)

---

[7] MCL 769.10; MSA 28.1082. Similarly, see the third and fourth offender statutes, MCL 769.11; MSA 28.1083 and MCL 769.12; MSA 28.1084.

[8] MCL 750.529; MSA 28.797.

Again, there is no indication of an intent to establish a separate felony or require a consecutive sentence. The sentencing judge is merely required to impose a single sentence with a minimum term of at least two years.

The language employed by the Legislature in the felony-firearm statute, especially when analyzed against the backdrop of the sentence enhancement and mandatory minimum sentencing provisions quoted above, leaves no doubt that the Legislature intended to make the carrying of a weapon during a felony a separate crime and intended that cumulative penalties should be imposed. The Legislature has clearly expressed its judgment that carrying a firearm during any felony which may, but need not necessarily, involve the carrying of a firearm, entails a distinct social harm inimical to the public health, safety and welfare which deserves separate treatment. In order to deter the use of guns, the Legislature has chosen to create a separate crime.

We are thus squarely faced with the question of whether separate convictions and cumulative punishments for both a felony and for felony-firearm violates the Double Jeopardy Clause of the United States or Michigan Constitutions.

## II

In *Brown v Ohio,* 432 US 161; 97 S Ct 2221; 53 L Ed 2d 187 (1977), the United States Supreme Court stated that the Double Jeopardy Clause does not substantively restrict the legislative branch:

"Because it was designed originally to embody the protection of the common-law pleas of former jeopardy, see *United States v Wilson,* 420 US 332, 339-340 [95 S Ct 1013; 43 L Ed 2d 232] (1975), the Fifth Amendment

double jeopardy guarantee serves principally as a restraint on courts and prosecutors. *The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments;* but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial." *Brown, supra,* 165. (Emphasis added.)

Then, after recognizing that the Double Jeopardy Clause protects against multiple punishments for the same offense, the Court stated that in the single prosecution context (such as that in the cases at bar), the clause only serves to ensure that the defendant is not subjected to more punishment than the legislative branch has authorized:

"The Double Jeopardy Clause 'protects * * * against multiple punishments for the same offense.' *North Carolina v Pearce,* 395 US 711, 717 [89 S Ct 2072; 23 L Ed 2d 656] (1969). Where consecutive sentences are imposed at a single criminal trial, *the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization* by imposing multiple punishments for the same offense. See *Gore v United States,* 357 US 386 [78 S Ct 1280; 2 L Ed 2d 1405] (1958); *Bell v United States,* 349 US 81 [75 S Ct 620; 99 L Ed 905] (1955); *Ex parte Lange,* [85 US] 18 Wall 163 [21 L Ed 872] (1874)." *Brown, supra,* 165. (Emphasis added.)

The Court's citations to *Gore v United States,* 357 US 386; 78 S Ct 1280; 2 L Ed 2d 1405 (1958), *Bell v United States,* 349 US 81; 75 S Ct 620; 99 L Ed 905 (1955), and *Ex parte Lange,* 85 US (18 Wall) 163; 21 L Ed 872 (1874), in support of this proposition are illuminating. In *Gore,* the Court rejected a defendant's double jeopardy challenge to his multiple convictions and consecutive sentences arising from a single sale of narcotics. Mr. Justice

Frankfurter, speaking for the Court, concluded his opinion by stating:

"In effect, we are asked to enter the domain of penology, and more particularly that tantalizing aspect of it, the proper apportionment of punishment. Whatever views may be entertained regarding severity of punishment, whether one believes in its efficacy or its futility, * * * *these are peculiarly questions of legislative policy." Gore, supra,* 393. (Emphasis added.)

Even Mr. Chief Justice Warren, in dissent, stated:

"The problem of multiple punishment is a vexing and recurring one. It arises in one of two broad contexts: (a) a statute or a portion thereof proscribes designated conduct, and the question is whether the defendant's conduct constitutes more than one violation of this proscription. Thus, murdering two people simultaneously might well warrant two punishments but stealing two one-dollar bills might not. (b) Two statutes or two portions of a single statute proscribe certain conduct, and the question is whether the defendant can be punished twice because his conduct violates both proscriptions. Thus, selling liquor on a Sunday might warrant two punishments for violating a prohibition law and a blue law, but feloniously entering a bank and robbing a bank, though violative of two statutes, might warrant but a single punishment.

*"In every instance the problem is to ascertain what the legislature intended." Gore, supra,* 393-394. (Emphasis added.)

In *Bell,* the Court began by stating:

"Once more it becomes necessary to determine 'What Congress has made the allowable unit of prosecution,' *United States v Universal CIT Credit Corp,* 344 US 218, 221 [73 S Ct 227; 97 L Ed 260 (1952)], under a statute which does not explicitly give the answer." *Bell, supra,* 81.

The defendant contended that his single act of simultaneously transporting two women across state lines for immoral purposes constituted a single offense and could not, as the lower courts had ruled, be the basis for cumulative punishments under separate counts of one indictment. The Court stated:

"The punishment appropriate for the diverse federal offenses is a matter for the discretion of Congress, subject only to constitutional limitations, more particularly the Eighth Amendment. Congress could no doubt make the simultaneous transportation of more than one woman in violation of the Mann Act liable to cumulative punishment for each woman so transported. The question is: did it do so?" *Bell, supra,* 82-83.

The Court went on to conclude that Congress had not expressed a clear intent to authorize multiple convictions and cumulative punishments, and that absent such a clear expression, "doubt will be resolved against turning a single transaction into multiple offenses". *Bell, supra,* 84.

In *Lange,* the defendant had been convicted in a single proceeding of stealing United States mail bags. The punishment authorized by Congress for this offense was imprisonment for one year *or* a monetary fine. The trial judge sentenced the defendant to one year's imprisonment *and* a monetary fine. After the defendant had paid the fine, the judge vacated the original sentence and resentenced him to one year's imprisonment. The Supreme Court reversed and discharged the defendant on the ground that he had been twice punished for the same offense. The trial judge had exceeded his authority.

It is argued, however, that the rule articulated in *Blockburger v United States,* 284 US 299; 52 S

Ct 180; 76 L Ed 306 (1932), requires that the felony-firearm statute be struck down as violative of the Double Jeopardy Clause.

In *Blockburger,* the Court stated:

"The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger, supra,* 304.

It is contended on the basis of *Jeffers v United States,* 432 US 137; 97 S Ct 2207; 53 L Ed 2d 168 (1977), and *Simpson v United States,* 435 US 6; 98 S Ct 909; 55 L Ed 2d 70 (1978), that this rule is a constitutional test which must be satisfied in every case, despite the Court's statement in *Iannelli v United States,* 420 US 770; 95 S Ct 1284; 43 L Ed 2d 616 (1975), that "[t]he test articulated in *Blockburger v United States* [citation omitted] serves [the] function of identifying congressional intent to impose separate sanctions for multiple offenses arising in the course of a single act or transaction". *Iannelli, supra,* 785, fn 17.

We need not decide whether the *Blockburger* rule is a constitutional test, because even if it is, it is satisfied in these cases.

In applying the *Blockburger* rule, the United States Supreme Court has focused on the legal elements of the respective offenses, not on the particular factual occurrence which gives rise to the charges. Thus in *Harris v United States,* 359 US 19; 79 S Ct 560; 3 L Ed 2d 597 (1959), the Court affirmed multiple convictions and consecutive sentences for both purchasing narcotics from an unstamped package and receiving or concealing the same narcotics with knowledge that they had

been unlawfully imported, despite the fact that both convictions were based on evidence of one act of possessing narcotics. Different statutory presumptions stemming from the proven fact of possession supplied the different legal elements of the two offenses. The Court stated:

"[T]he *violation,* as distinguished from the direct evidence offered to prove the violation, was distinctly different under each of the respective statutes." *Id.,* 23.

Similarly, in *Iannelli v United States,* the Court stated:

"In determining whether separate punishment might be imposed, *Blockburger* requires that courts examine the offenses to ascertain 'whether each provision requires proof of a fact which the other does not.' *Id.,* at 304. As *Blockburger* and other decisions applying its principle reveal, see, *e.g., Gore v United States,* 357 US 386 [78 S Ct 1280; 2 L Ed 2d 1405] (1958); *American Tobacco Co v United States,* 328 US 781, 788-789 [66 S Ct 1125; 90 L Ed 1575] (1946), the Court's application of the test focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli, supra,* 785, fn 17.

Looking only to the "statutory elements" of the offenses in the cases at bar, the *Blockburger* rule is satisfied.

In *Wayne County Prosecutor v Recorder's Court Judge,* where the defendant was convicted of both second-degree murder and felony-firearm, the prosecution was legally required, in order to convict the defendant of second-degree murder, to prove a homicide and malice aforethought—neither of which is legally required in order to convict the

defendant of felony-firearm. On the other hand, in order to convict the defendant of felony-firearm, the prosecution was legally required to prove first, that the defendant carried or possessed a firearm —an element which is not necessary to secure a conviction for second-degree murder—and second, that the firearm was carried or possessed during the commission of *any* felony or attempted felony. The prosecution was not legally required to prove second-degree murder. It could have secured a conviction by proving any felony other than carrying a concealed weapon or unlawful possession of a weapon. Although factually in this particular case the prosecution relied on proof of the murder in order to secure the felony-firearm conviction, legally it was not required to do so. Any proper felony would have sufficed. It is possible, legally, to commit felony-firearm without committing second-degree murder. Despite a "substantial overlap in the proof offered to establish the crimes", *Iannelli, supra,* 785, fn 17, "the violation, as distinguished from the direct evidence offered to prove the violation, was distinctly different under each of the respective statutes". *Harris, supra,* 23. Legally, "each provision requires proof of a fact that the other does not". *Blockburger, supra,* 304.

The same rationale applies to *People v Brintley,* in which the defendant was convicted of both felony-firearm and armed robbery. In order to convict the defendant of armed robbery, the prosecution was legally required to prove an assault, a taking and an intent to permanently deprive the owner of his or her property—none of which are legally required to convict the defendant of felony-firearm. On the other hand, in order to convict the defendant of felony-firearm, the prosecution was legally required to prove two things: first, that the

defendant carried or possessed a firearm—a fact which is not necessary to secure a conviction for armed robbery (any "dangerous weapon" or "article" used or fashioned so as to lead the victim to believe it is a dangerous weapon will satisfy the "armed" requirement of the armed robbery statute);[9] second, that the firearm was carried or possessed during the course of any felony or attempted felony. The prosecution was not legally required to prove armed robbery. Any proper felony would have sufficed. Each of these statutes legally requires proof of a fact which the other does not. Proof of felony-firearm does not necessarily prove armed robbery. And, as in *Harris v United States, supra,* the mere fact that one factual occurrence, there the possession of narcotics and here the possession of a gun, is employed to supply proof of an element of two distinct crimes does not violate the *Blockburger* rule. A substantial overlap of factual proofs is permissible. *Iannelli, supra.*

A similar rationale was used by the United States Court of Appeals for the Eighth Circuit to uphold a state defendant's multiple convictions and consecutive sentences for both robbery and using a firearm in the commission of a felony. *Kowalski v Parratt,* 533 F2d 1071 (CA 8, 1976), *cert den* 429 US 844; 97 S Ct 125; 50 L Ed 2d 115 (1976). The Court stated:

"Although the appellant assumes that count II [felony-firearm] *required* proof of the robbery alleged in count I, that is not the case. The weapons statute is satisfied by proof that a weapon was possessed or used during *any* felony." *Id.,* 1073. (Emphasis added.)[10]

---

[9] MCL 750.529; MSA 28.797.

[10] In *Kowalski,* as in the cases at bar, there were no multiple prosecution problems. The convictions and punishments resulted from

## III

In some cases this Court has focused on the factual proofs involved and has concluded that both of two convictions and their attendant punishments cannot stand. See, for example, *People v Cook*, 236 Mich 333; 210 NW 296 (1926), *People v Martin*, 398 Mich 303; 247 NW2d 303 (1976), and *People v Stewart (On Rehearing)*, 400 Mich 540; 256 NW2d 31 (1977). However, a common thread running through these cases is that none of them involved statutes which evidenced a clear legislative intent to authorize separate convictions and cumulative punishments based on one occurrence.

In *People v Cook, supra,* the defendant was convicted of possessing intoxicating liquor pursuant to a single statute which prohibited all of the following activities with respect to such liquor: manufacturing; selling; keeping for sale; giving away; bartering; furnishing; transporting; possessing; or keeping a place where such liquor is (a) manufactured; (b) sold; (c) stored; (d) possessed; (e) given away; (f) furnished. There was no clear indication in this statute that the Legislature intended to authorize separate convictions and cumulative punishment for each of these activities based on one factual occurrence. After the defendant had served the sentence for his possession conviction, he was retried and reconvicted pursuant to the same statute for transporting the same liquor. Factually, both of these convictions were based on the same act of transporting one load of liquor to one place. The Court interpreted the statute as follows:

---

a single proceeding. Compare *Harris v Oklahoma,* 433 US 682; 97 S Ct 2912; 53 L Ed 2d 1054 (1977), especially the concurring opinion by Brennan, J.

"If a person does a single one of the above stated things he violates this law, and is subject to its penalty; but because the doing of one of these things necessarily involves the doing of one, many, or all of the others, it cannot be said that for the single act he is liable to a punishment many times greater than the legislature prescribed. The whole statute makes a single crime and its clear purpose and intent is to forbid and punish every conceivable act which has to do with intoxicating liquor." *Id.*, 336.

In this context the Court then declared:

" 'It is elementary that a prosecution and conviction or acquittal of any part of a single crime bars any further prosecution for an offense made up of the whole or part of the same crime.' " *Id.*, 336-337.

The Court analyzed the facts of the case and stated:

"[W]e cannot conclude other than that the conviction of defendant for possession bars his subsequent prosecution for transporting the same liquor. It would have been physically impossible to transport it without possessing it, and under the facts in the instant case, it could not have been possessed by the defendant in the automobile in front of the house on John street where the officers were stationed, and where it was taken from him, without it having been transported to that point. Proof of the facts stated would necessarily have brought conviction for either possession or transporting." *Id.*, 336.

The defendant's conviction for transporting the liquor was reversed and he was discharged.

In *People v Martin, supra,* the defendant had been convicted in a single trial of delivering and possessing the same heroin. Factually, both convictions were based on proof of one act of possession incident to delivery. The defendant argued on

appeal that the multiple convictions were invalid because the Legislature did not intend by enactment of the possession and delivery statutes to authorize a separate conviction for possession when the only possession involved was possession incident to delivery and argued that such multiple convictions violated the Double Jeopardy Clauses of the Michigan and United States Constitutions. The possession and delivery statutes did not evidence a clear legislative intent to authorize multiple convictions.[11] The Court held that because, factually, the possession giving rise to the possession conviction was the same possession as that involved in the delivery conviction, both convictions could not stand:

"Testimony at trial indicated that a police informant brought 1/2 ounce of heroin directly from defendant. The defendant personally cut the heroin and delivered it to the informant. Defendant was charged in a two-count information with (1) delivery and (2) possession of a certain 15.62 grams of heroin. There is no dispute over the fact that it was the same 15.62 grams of heroin in each count.

"Possession of the heroin present in *this* case was that necessary to its delivery.

"On the evidence adduced at this trial, there is no doubt that unlawful possession was a lesser included offense of delivery.

"When the jury found defendant guilty of unlawful delivery of this heroin on the evidence in this record they necessarily found him in possession of it.

\* \* \*

"A defendant may be charged and tried for each act that constitutes a separate crime. However, when tried for an act which includes lesser offenses, if the jury

[11] See MCL 335.341(1)(a); MSA 18.1070(41)(1)(a) and MCL 335.341(4)(a); MSA 18.1070(41)(4)(a). Compare the felony-firearm statute, MCL 750.227b; MSA 28.424(2), especially the separate felony and consecutive sentencing portions thereof.

finds guilt of the greater, the defendant may not also be convicted separately of the lesser included offense." *Id.,* 307-309.

The Court relied *inter alia* on *People v Cook, supra,* and on *O'Clair v United States,* 470 F2d 1199 (CA 1, 1972), *cert den* 412 US 921; 93 S Ct 2741; 37 L Ed 2d 148 (1973). *O'Clair,* like *Cook,* involved multiple convictions based on a single statute which did not clearly evidence a legislative intent to authorize multiple convictions based on one factual occurrence.[12] Indeed, the Court in *O'Clair* concluded as a matter of statutory interpretation that Congress had not intended to authorize multiple convictions.

In *People v Stewart, supra,* the Court, relying on *People v Martin, supra,* reached the same result in a nearly identical case involving sale and possession of heroin. The only significant difference between the two cases was that the *Stewart* case involved the predecessor statutes of the ones involved in *Martin.*[13] There was again no clear expression in these predecessor statutes of an intent to authorize separate convictions and cumulative punishments.[14]

These cases stand for the proposition that where the Legislature has not clearly authorized multiple convictions and cumulative punishments, both of two convictions and their attendant punishments cannot stand. They are inapposite because the Legislature has clearly expressed in the felony-firearm statute an intent to authorize multiple convictions and cumulative punishments.

---

[12] See 18 USC 2113, subds (a) and (d).

[13] See MCL 335.152; MSA 18.1122 and MCL 335.153; MSA 18.1123.

[14] Compare the felony-firearm statute, MCL 750.227b; MSA 28.424(2), especially the separate felony and consecutive sentencing portions thereof.

## IV

We reverse the Court of Appeals in each case and reinstate the defendants' respective felony-firearm convictions. We remand *Wayne County Prosecutor v Recorder's Court Judge (In the Matter of People v Annette Gail Alexander)* to the trial court for imposition of the mandatory two-year consecutive sentence for felony-firearm.

Williams, Fitzgerald, and Ryan, JJ., concurred with Coleman, C.J.

Kavanagh, J. *(to affirm Court of Appeals)*. Michigan's felony-firearm statute, MCL 750.227b; MSA 28.424(2), authorizes the imposition of separate criminal sanctions for committing a felony and for committing it while in possession of a firearm. The question before us is whether by enacting this provision the Legislature has impermissibly authorized double punishment for the same offense.

We hold that the substantive offense and the underlying felony are the "same" for double jeopardy purposes, and that conviction of both violates the Michigan and Federal double jeopardy provisions. Const 1963, art 1, § 15; US Const, Am V. We also hold that the expressed legislative intent to authorize separate convictions and punishment for the two offenses does not avoid violation of these constitutional guarantees.

## I

The felony-firearm statute states:

"(1) A person who carries or has in his possession a firearm at the time he commits or attempts to commit a felony, except the violation of section 227 [carrying a

concealed weapon] or section 227a [unlawful possession of a weapon by a licensee], is guilty of a felony, and shall be imprisoned for 2 years. * * *

"(2) The term of imprisonment prescribed by this section shall be in addition to the sentence imposed for the conviction of the felony or the attempt to commit the felony, and shall be served consecutively with and preceding any term of imprisonment imposed for the conviction of the felony or attempt to commit the felony."

Annette Gail Alexander killed a man with a shotgun. She was convicted of both second-degree murder, MCL 750.317; MSA 28.549, and possessing a firearm while committing the murder. MCL 750.227b; MSA 28.424(2). She received a 2-1/2- to 10-year prison sentence for the murder count, but the trial court refused to impose the mandatory 2-year sentence for the felony-firearm conviction, stating that to do so would punish the defendant twice for the same offense. The Wayne County Prosecutor filed a complaint for superintending control, or alternatively, application for leave to appeal with the Court of Appeals.

In an opinion released September 20, 1978, the Court of Appeals vacated defendant Alexander's felony-firearm conviction on the ground that it violated her right to be free from double punishment. *Wayne County Prosecutor v Recorder's Court Judge,* 85 Mich App 727; 272 NW2d 587 (1978).

Curtis Brintley exhibited a handgun while robbing a woman. He received a five- to ten-year sentence upon conviction for armed robbery, MCL 750.529; MSA 28.797, and a two-year consecutive sentence upon conviction of the felony-firearm provision. On appeal as of right to the Court of Appeals, that Court vacated his felony-firearm conviction, again reasoning that defendant had

been twice punished for the same offense. *People v Brintley,* 85 Mich App 714; 272 NW2d 582 (1978).

We agree with the Court of Appeals disposition of these two cases, and affirm.

## II

There is no doubt that in enacting the felony-firearm statute the Legislature intended to create an offense distinct from the underlying felony. The statute provides that possessing a firearm during the commission of a felony is a felony in and of itself. Subd (1). The mandatory sentence provision also states that the felony-firearm sentence is to run before and consecutive to the sentence imposed for the underlying felony. Subd (2). When comparing the language used in this statute to that employed in sentence enhancement provisions[1] or minimum sentence provisions,[2] it is clear neither of these alternatives was intended.

## III

Because this statute creates a separate and distinct offense, we must determine whether it is the "same" offense as the underlying felony. If it is, punishment for both violates our constitutional prohibitions against double jeopardy:

"[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." US Const, Am V.

"No person shall be subject for the same offense to be twice put in jeopardy." Const 1963, art 1, § 15.

---

[1] Compare the habitual offender statute for second offenders, a sentence-enhancement provision. MCL 769.10; MSA 28.1082.

[2] Compare the last sentence of MCL 750.529; MSA 28.797, the armed robbery statute.

*A*

*Blockburger v United States,* 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932), states the rule for determining whether two offenses are the "same" for Federal double jeopardy purposes:

"Each of the offenses created requires proof of a different element. The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.,* 304.

This test focuses upon the statutory elements of the two offenses, not upon the evidence introduced at trial to establish their commission. *Iannelli v United States,* 420 US 770, 785, fn 17; 95 S Ct 1284; 43 L Ed 2d 616 (1975).

Under *Blockburger* a necessarily included lesser offense, as we have defined it in *People v Ora Jones,* 395 Mich 379; 236 NW2d 461 (1975), is the "same" offense as the greater. The greater offense contains all of the legal elements contained in the lesser, plus more. Each provision does not require "proof of a fact which the other does not". Because it is legally impossible to commit the greater without committing the lesser, they are the "same" offense. The lesser is logically included in the greater.

An offense can also be necessarily included in another if the Legislature decides to so structure the law. This is true whenever a statute provides that one crime is committed only as and when another crime is committed. Such an offense would be necessarily included not as a matter of logic, but on account of legislative determination. Such

an offense would also be the "same" for double jeopardy purposes under *Blockburger.*

The "logically" included offense principle was employed by the United States Supreme Court in *Brown v Ohio,* 432 US 161; 97 S Ct 2221; 53 L Ed 2d 187 (1977), to preclude separate convictions of both joyriding and auto theft. The "legislatively determined" included offense principle was employed by the United States Supreme Court in *Harris v Oklahoma,* 433 US 682; 97 S Ct 2912; 53 L Ed 2d 1054 (1977), to preclude conviction of both felony murder and the underlying felony:

"When as here, conviction of a greater crime, murder, cannot be had without conviction of the lesser crime, robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime after conviction of the greater one."

See, also, *Johnson v Hampton,* 434 US 947; 98 S Ct 471; 54 L Ed 2d 307 (1977) (felony-murder and arson).

Looking only to the statutory elements, the prosecutor asserts here that because any felony may be the underlying crime in a felony-firearm prosecution, there is no one specific felony which is necessarily included by statutory mandate.

We are not persuaded.

Every prosecution for felony-firearm must charge 1) possession of a firearm, 2) during the commission of a specified felony. *Cf. People v Westerberg,* 274 Mich 647; 265 NW 489 (1936). Only proof of the underlying felony charged will supply the second element which the Legislature has determined to be necessary to effect a felony-firearm conviction.

This does not, as the prosecutor suggests, do violence to *Blockburger* by converting the test into

a factual one. The focus is still on the legal elements, and it is the specification of the felony in the charge that has the effect of making it a necessarily included offense under the law.

We are satisfied that this conclusion comports with the reasoning of the United States Supreme Court in *Harris, supra.*[3]

## B

Michigan precedent is in line with this result.

In *People v Stewart (On Rehearing),* 400 Mich 540; 256 NW2d 31 (1977), this Court was unanimous in deciding that conviction of both the possession and the sale of heroin is improper when, on the facts of the case, the possession and sale are but one indivisible criminal act. In *Stewart,* the possession was the " 'necessary' prerequisite" to the commission of the sale, and when the jury found the defendant guilty of one, it necessarily also found him guilty of the other. *Id.,* 548-549. See, also, *People v Martin,* 398 Mich 303; 247 NW2d 303 (1976).

The logic of *Martin* and *Stewart* of permitting only one conviction applies with equal force here. When the juries found defendants in these cases guilty of the possession charge, they necessarily found them guilty of the underlying felony. The felony here was the " 'necessary' prerequisite" to the felony-firearm charge, and on the facts, constituted one indivisible criminal act. This renders them the "same" offense, and under the authority of *Stewart* and *Martin,* one conviction is all that

___

[3] The Oklahoma felony-murder statute in *Harris* is structurally identical to the felony-firearm statute: it also incorporates the commission of "any" felony as a statutory element. Okla Stat 1971, tit 21, § 701. In finding a double jeopardy violation in *Harris* the Supreme Court focused upon the particular felony which was used at trial to satisfy this statutory element.

may be had. *Stewart, supra,* 548-549; *Martin, supra,* 307-310.

## IV

We are asked to find the necessarily included offense principle applied in *Brown* and *Harris* distinguishable because *Brown* and *Harris* both involved two trials rather than one.

We do not regard the distinction as controlling.

*Blockburger* was a single trial case, and both *Brown* and *Harris* used the *Blockburger* test.

"If two offenses are the same under this test *[Block-burger]* for purposes of barring consecutive sentences at a single trial, they necessarily will be the same for purposes of barring successive prosecutions. * * * Unless 'each statute requires proof of an additional fact which the other does not,' * * * the Double Jeopardy Clause prohibits successive prosecutions as well as cumulative punishment." *Brown, supra,* 166.

In *Iannelli, supra,* a single-trial case, the Court observed:

"When both charges are considered at a single trial, the real problem is the avoidance of dual punishment. This problem is analogous to that presented by the threat of conviction for a greater and a lesser included offense, and should be treated in a similar manner." *Id.,* 786, fn 18.

Moreover in *Jeffers v United States,* 432 US 137; 97 S Ct 2207; 53 L Ed 2d 168 (1977), a multiple prosecution case, the Court acknowledged:

"Even if the two indictments had been tried together, the cumulative-punishment issue would remain." *Id.,* 154, fn 23.

Multiple prosecutions do engender double jeopardy concerns that are not present in single prosecutions, *Brown, supra,* 432 US 165-166, fn 6. But protection from multiple *punishment* for the same offense lies at the core of the Double Jeopardy Clause, and this protection is as applicable to single prosecutions as to two. *Ex parte Lange,* 85 US (18 Wall) 163; 21 L Ed 872 (1874).

V

Finally, the people contend that, assuming both convictions are for the "same" offense, there is no double jeopardy here because the Legislature has expressly authorized the double punishment.

It is urged that the Double Jeopardy Clause does not limit the Legislature to the same extent as it does the executive and judiciary. While conceding that no branch of government may secure multiple convictions for the "same" offense through the use of multiple trials (a prohibition the people term "procedural double jeopardy"), the people argue that the Legislature is not limited as to what it may authorize in a single proceeding. Hence, "substantive double jeopardy", the guarantee disallowing multiple punishment at a single trial, only limits the discretion of courts and prosecutors. The Legislature is free to create and define crimes as it wishes, and indeed to provide for double punishment at one trial should it desire. Hence, it is asserted that when the Legislature has clearly expressed its intent to provide double punishment at a single trial, as it has here, the *Blockburger* test has no application. Once the legislative intent has been determined, it must be given effect.[4]

───────────

[4] The people concede that *Blockburger* is a constitutional test for determining whether successive prosecutions are permissible, and that legislative intent cannot override this protection. It is only in the

We disagree.

Determination of legislative intent is the beginning, not the end, of analysis necessary to decide a double jeopardy question. *Jeffers v United States,* 432 US 137; 97 S Ct 2207; 53 L Ed 2d 168 (1977).

We do not accept the suggestion that "procedural" double jeopardy limits the Legislature while "substantive" double jeopardy does not, or that the Legislature can authorize multiple punishments at one trial which it could not authorize at successive trials.

If the Legislature may not intentionally subject a defendant to the harassment, anxiety, and expense of defending multiple charges of the "same" offense at successive trials, which the people concede, it may not intentionally do so at one trial. Jeopardy attends each charge of an offense, regardless of its occasion.

"[T]he purpose of the ban on double jeopardy is to prevent 'repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity.' *Green v United States,* 355 US 184, 187; 78 S Ct 221, 223; 2 L Ed 2d 199 (1957). It would seem apparent that if the state cannot constitutionally obtain two convictions for the same act at two separate trials, it cannot do so at the same trial. Although admittedly there is less expense, anxiety and ordeal when the blows are delivered at once, one can hardly say that one is not punished, hurt, or embarrassed, if one receives two convictions." *O'Clair v United States,* 470 F2d 1199, 1203 (CA 1, 1972).

We are convinced that *Blockburger* is a constitu-

single trial context that the people argue *Blockburger* is a tool of statutory construction.

tional test that must be used whenever it is asserted that two offenses are the "same". We are satisfied that the language of the United States Supreme Court in *Jeffers, supra,* and *Simpson v United States,* 435 US 6; 98 S Ct 909; 55 L Ed 2d 70 (1978), indicates a similar view.

"Cases in which the Government is able to prove violations of two separate criminal statutes with precisely the same factual showing, as here, raise the prospect of double jeopardy and the possible need to evaluate the statutes in light of the *Blockburger* test. That test, the Government argues, is satisfied in this case. We need not reach the issue. Before an examination is made to determine whether cumulative punishments for the two offenses are constitutionally permissible, it is necessary, following our practice of avoiding constitutional decisions where possible, to determine whether Congress intended to subject the defendant to multiple penalties for the single criminal transaction in which he engaged. *Jeffers v United States [supra]."* *Simpson, supra,* 11-12.

# VI

We vacate the felony-firearm conviction and affirm the conviction of the underlying felony in each case. We adopt Judge RILEY's explanation of the reasons for this disposition, as set forth in 85 Mich App at 742-743.

Affirmed.

LEVIN and BLAIR MOODY, JR., JJ., concurred with KAVANAGH, J.

LEVIN, J. *(dissenting).* I agree with Justice KAVANAGH, for the reasons set forth in his opinion,

that the Double Jeopardy Clause[1] precludes conviction and punishment for both the underlying felony and felony firearm[2] and that the felony-firearm convictions should be vacated.[3] I write separately primarily to respond to the opinion of the Court.

# I

It is our duty, minimally, to decide these cases as we think the United States Supreme Court would decide them.[4] Our assessment of how it would decide these cases should reflect the reasoning and holdings of that Court and its repeated statements of law should be taken at face value.[5]

---

[1] See, generally, Note, *Twice in Jeopardy,* 75 Yale L J 262 (1965); Note, *Double Jeopardy: Multiple Prosecutions Arising From the Same Transaction,* 15 Amer Crim L Rev 259 (1978); *The Supreme Court, 1976 Term,* 91 Harv L Rev 70, 106 (1977).

Compare Schwartz, *Multiple Punishment for the "Same Offense": Michigan Grapples with the Definitional Problem,* 25 Wayne L Rev 825 (1979), with Comment, *One With Gun Gets You Two: Deterrent or Double Jeopardy?,* 1979 Detroit Col of L Rev 123.

[2] This Court's determination that the statute providing "separate convictions and cumulative punishments" for the underlying felony and felony firearm does not violate the Double Jeopardy Clause makes it unnecessary to consider whether, if violative of the clause, it should be saved by construing it as a sentence enhancement statute.

[3] The prosecutor makes no claim that the convictions for the lesser offenses should be vacated if the clause is a bar. The lesser offenses—lesser only because they have one element fewer (the firearm) than the greater offenses—are, in the instant cases, more serious and subject the defendants to greater punishment: any number of years or life.

I also associate myself with Judge RILEY's reasoning in *Wayne County Prosecutor v Recorder's Court Judge,* 85 Mich App 727, 742; 272 NW2d 587 (1978).

[4] *People v Drielick,* 400 Mich 559, 567; 255 NW2d 619 (1977), and cases cited therein.

[5] Much of what has been written over the years in the "same offense" Double Jeopardy opinions of the United States Supreme Court was, indeed, unnecessary to decision. Further, its holdings can generally be distinguished from the case at hand. Nevertheless, repeated statements of the governing rule of law by the Supreme Court cannot properly be ignored by any other court because they

Those decisions provide no support for the holding implicit in the Court's opinion that, in the "single prosecution" context, the Legislature may, consistent with the Double Jeopardy Clause, define crimes and fix punishments to provide cumulative convictions and punishments for the same offense.

To the contrary, while the Supreme Court has frequently said that a legislature is free to define crimes and fix punishments,[6] it has also said that the charging powers of prosecutors and the adjudicatory and sentencing powers of courts may not be exercised so as to subject a person—even at one trial[7]—to the jeopardy of multiple convictions or

were unnecessary to decision or by drawing distinctions inconsistent with the thrust and rationale of the explicated rule of law. The Supreme Court alone has the prerogative of choosing the time and the case to announce new doctrine and to decide when and if to take back what it said before and if it does so whether and how to explain.

[6] *Brown v Ohio,* 432 US 161, 165; 97 S Ct 2221; 53 L Ed 2d 187 (1977); *Gore v United States,* 357 US 386, 392; 78 S Ct 1280; 2 L Ed 2d 1405 (1958).

[7] In *Gore v United States, supra,* p 389; *Blockburger v United States,* 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932); *Morgan v Devine,* 237 US 632, 638-639, 641; 35 S Ct 712; 59 L Ed 1153 (1915); *Albrecht v United States,* 273 US 1, 11; 47 S Ct 250; 71 L Ed 505 (1927); and *American Tobacco Co v United States,* 328 US 781, 787; 66 S Ct 1125; 90 L Ed 1575 (1946), multiple charges were tried together. The Court appears to have decided on the merits defendants' Double Jeopardy claims, concluding in each instance that separate offenses had been charged.

The statement in *Brown, supra,* regarding "the role of the constitutional guarantee" "[w]here consecutive sentences are imposed at a single criminal trial"—that it "is limited to assuring that the court does not exceed *its legislative authorization* by imposing multiple punishments for the same offense" (emphasis supplied)—should be read together with its further statement *(Brown, supra,* p 166, fn 6) that "to permit the imposition of consecutive sentences" the two offenses must be "sufficiently different" and with the Court's analysis the same day in *Jeffers* (fn 8, *infra),* rejecting the claim that a legislative body may authorize a court to impose multiple punishments for the same offense.

To be sure the life of the Supreme Court's statements regarding the imposition of multiple punishment for the same offense at a single trial has been dictum, not holding, as no case has found an imposition violative of the Double Jeopardy Clause. We nevertheless are obliged to take at face value the court's repeated statements and analysis indicating that the clause does limit a court's power so to impose

punishments for the same offense.[8]

The Supreme Court has adopted the "required evidence" test[9] to determine whether the offenses

---

multiple punishment and that *Blockburger* is the test by which the issue is to be determined.

If the Double Jeopardy Clause does not preclude imposition at a single trial of multiple punishments for the same offense, as that term is defined by the Supreme Court, a great amount of judicial effort has been expended needlessly as all that needed to be said is just that.

[8] *Brown v Ohio, supra; Gore v United States, supra; Jeffers v United States,* 432 US 137, 146, 151; 97 S Ct 2207; 53 L Ed 2d 168 (1977) (Blackmun, J.).

In *Jeffers v United States, supra,* pp 146, 150, 158, eight justices rejected a United States Court of Appeals opinion that had construed *Iannelli v United States,* 420 US 770; 95 S Ct 1284; 43 L Ed 2d 616 (1975), as creating "a new double jeopardy rule applicable only to complex statutory crimes" permitting separate punishment of greater and lesser offenses "if Congress so intended". The lead opinion, signed by four justices, stated on the authority of *Brown v Ohio, supra,* decided the same day, that the Double Jeopardy Clause prohibits the government from "trying a defendant for a greater offense after it has convicted him of a lesser included offense", and the dissenting opinion, signed by four justices, was to the same effect.

The analysis in the single trial case of *Gore v United States, supra,* pp 389, 392, is inconsistent with the notion that the Legislature may authorize courts to impose cumulative punishments for the same offense. If it can, there was no reason to say that Congress was not merely giving "different labels to the same thing", "different descriptions of the same offense".

In *Morgan v Devine, supra,* pp 638-639, 641, where the defendant was convicted at a single trial and sentenced for two separate offenses, the Court decided his Double Jeopardy claim on the merits, concluding that there was no identity of offenses, although it acknowledged that it was within the competency of Congress to say what shall be offenses and that its purpose was to create separate offenses.

[9] *Blockburger v United States, supra.*

The opinion of this Court states that it is unnecessary to decide whether the *Blockburger* rule is a "constitutional test which must be satisfied in every case".

Recently, the Supreme Court stated that *Blockburger* states a constitutional test:

"The *Blockburger* test has its primary relevance *in the double jeopardy context,* where it is a guide for determining when two separately defined crimes constitute the 'same offense' *for double jeopardy purposes. Brown v Ohio, supra." Simpson v United States,* 435 US 6, 11; 98 S Ct 909; 55 L Ed 2d 70 (1978) (emphasis supplied).

Earlier, in *Brown v Ohio, supra,* p 166, the Court, responding to a Double Jeopardy claim, said that *Blockburger* states the "established

are the "same".[10] While the Court, in the application of that test, has looked to the statutory elements and the proofs required to prove "the *violation* as distinguished from the direct evidence offered to prove that violation [emphasis in original]",[11] the alternative argument of this Court, based on those precepts, that, if the Double Jeopardy Clause applies at all, the underlying felony and felony firearm are not the same offense, ignores *Harris v Oklahoma,* 433 US 682-683; 97 S Ct 2912; 53 L Ed 2d 1054 (1977). The Court there held that where an element of the greater offense is the commission of "any felony",[12] the focus is not on

test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment". Similarly, see *Gore v United States, supra,* p 389; *American Tobacco Co v United States, supra,* p 788.

[10] US Const, Am V; Const 1963, art 1, § 15.

[11] *Harris v United States,* 359 US 19, 23; 79 S Ct 560; 3 L Ed 2d 597 (1959).

[12] The Oklahoma statute provided:

"Homicide is murder in the following cases.

"1. When perpetrated without authority of law, and with a premeditated design to effect the death of the person killed, or of any other human being.

"2. When perpetrated by any act imminently dangerous to others and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual.

"3. When perpetrated without any design to effect death by a person engaged in the commission of *any felony.*" Okla Stat Ann, tit 21, § 701 (repealed, eff May 17, 1973) (emphasis supplied), and was later amended to read:

"A. A person commits murder in the first degree when he unlawfully and with malice aforethought causes the death of another human being. Malice is that deliberate intention unlawfully to take away the life of a human being, which is manifested by external circumstances capable of proof.

"B. A person also commits the crime of murder in the first degree when he takes the life of a human being, regardless of malice, in the commission of *forcible rape, robbery with a dangerous weapon, kidnapping, escape from lawful custody, first degree burglary or first degree arson.*" Okla Stat Ann, tit 21, § 701.7 (emphasis supplied), and

"Homicide is murder in the second degree in the following cases:

"1. When perpetrated by an act imminently dangerous to another

the elements of any of the large number of felonies that might theoretically have been charged but, rather, on the elements of the felony that was charged.[13]

In the instant cases the felonies charged were murder (in *Alexander)* and armed robbery (in *Brintley).* Paraphrasing *Harris, supra,* the proofs of those underlying felonies were "needed to prove" elements necessary for conviction of felony firearm. Conviction of the "greater" offense (felony firearm) "cannot be had without conviction of the lesser" offense (murder/armed robbery). The Double Jeopardy Clause, as applied in *Harris,* thus bars conviction of both offenses.

These consolidated cases are in a sense more compelling than *Harris* because here the defendants' convictions of felony firearm depended on their first being convicted of the underlying felony. *Harris* had been convicted of felony murder on

---

person and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual; or

"2. When perpetrated by a person engaged in the commission of *any felony* other than the unlawful acts set out in Section 1, Subsection B, of this act." Okla Stat Ann, tit 21, § 701.8 (emphasis supplied).

[13] The *Blockburger* test, first stated in the single trial context, has been applied without differentiation in multiple prosecutions at successive trials. See *Brown v Ohio, supra.*

No opinion of the Court states that varying tests or standards are to be applied depending on whether multiple charges are tried at a single or successive trials. Mr. Justice Brennan, in a separate opinion, suggested that higher standards should apply at successive trials, and that the standard stated in *In re Nielsen,* 131 US 176; 9 S Ct 672; 33 L Ed 118 (1889), be adopted. *Abbate v United States,* 359 US 187, 198, 201; 79 S Ct 666; 3 L Ed 2d 729 (1959). In *Brown v Ohio, supra,* p 166, the Court, in a footnote, stated that *Nielsen* provides "additional protection" not provided by *Blockburger. Harris v Oklahoma* (a successive trial case) relied on *Nielsen* (also a successive trial case).

It is not, however, the prerogative of this Court to enunciate new doctrine: that "same offense" is a protean concept having different meanings in the single and successive trial contexts, that *Harris* articulated a higher standard, and that it is applicable only in prosecutions at successive trials.

proof of a killing in the course of a robbery with firearms, and was thereafter tried separately and convicted of robbery with firearms. The conviction for the greater offense did not depend on conviction of the lesser.

The instant statute contemplates the defendant's conviction of an underlying felony as a condition precedent to his conviction of felony firearm.[14] Further, the jury was instructed in *Alexander* that conviction of felony firearm depended on conviction of another felony.[15] Conviction of an underlying felony—without regard to whether a formal element under the statute—was thus required for conviction of the felony-firearm charge. A conviction born of another conviction is uniquely within the proscription of the Double Jeopardy Clause which, among other things, seeks to protect ac-

---

[14] "(1) A person who carries or has in his possession a firearm at the time he commits or attempts to commit a felony, except the violation of section 227 or section 227a, is guilty of a felony, and shall be imprisoned for 2 years. Upon a second conviction under this section, the person shall be imprisoned for 5 years. Upon a third or subsequent conviction under this section, the person shall be imprisoned for 10 years.

"(2) The term of imprisonment prescribed by this section *shall be in addition* to the sentence imposed *for the conviction of the felony* or the attempt to commit the felony, and *shall be served consecutively* with and preceding any term of imprisonment imposed for the *conviction of the felony* attempt to commit the felony.

"(3) The term of imprisonment imposed under this section shall not be suspended. The person subject to the sentence mandated by this section shall not be eligible for parole or probation during the mandatory term imposed pursuant to subsection (1)." MCL 750.227b; MSA 28.424(2) (emphasis supplied).

[15] "Now it should be quite clear to you that the defendant's guilt or innocence of the second count will depend on whether or not she's convicted of any count charged in the first offense, guilty of any offense in the first count."

*Brintley* was a bench trial. The judge found:

"I find, as a. fact, beyond a reasonable doubt, that both defendants are guilty of Count I, robbery armed. I find, as a fact, that the instrumentality used in the robbery armed was a gun and that the defendant, Curtis Brintley, possessed the gun doing *[sic]* the commission of a felony which is in violation of statute 750.227b."

cused persons from proliferation of convictions and
punishments for the same offense.

## II

Although the Legislature might accomplish its
apparent purpose by a sentence enhancement pro-
vision,[16] since multiple convictions for the same
offense expose offenders to additional sentences[17] it
is substantively important to enforce the mandate
of the Double Jeopardy Clause.

While the Legislature may, consistent with the
Double Jeopardy Clause, provide that "one with a
gun gets you two", since the offenses here are the
"same" the clause precludes courts from effecting
the apparent legislative purpose of imposing a
mandatory sentence of two years through two
convictions and two punishments.

We would affirm the Court of Appeals.

KAVANAGH and BLAIR MOODY, JR., JJ., concur-
red with LEVIN, J.

---

[16] Such a provision could, for instance, require imposition of a
mandatory minimum term of imprisonment when the person who
commits or attempts to commit a felony has a firearm.

[17] For example, a second conviction may result in collateral conse-
quences under this state's and other habitual offender statutes, and at
subsequent trials where a past conviction record may be introduced in
evidence, used for impeachment, or be reflected in a pre-sentence
report.